# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSEF BOZEK and EVA BOZEK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 16 C 3100 |
| | ) | |
| BANK OF AMERICA, N.A., PNC BANK, | ) | Judge Jorge L. Alonso |
| and PNC MORTGAGE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Josef Bozek and Eva Bozek, who are facing foreclosure of the mortgage on their home, brought this action against their lenders, and they now seek leave to file a second amended complaint. The motion [60] is granted, but this action is stayed pursuant to the *Colorado River* abstention doctrine pending the outcome of the state-court foreclosure proceeding. The parties are directed to notify this Court when a final order has been entered in that foreclosure proceeding.

## BACKGROUND

Plaintiffs are the defendants in a foreclosure action, case no. 2010-CH-47361, in the Circuit Court of Cook County, in which BANA seeks to foreclose on a mortgage on plaintiffs' property at 616 The Lane, Hinsdale, Illinois. The mortgage secured a $490,000 loan plaintiffs received from PNC's predecessor, National City Bank, in order to purchase the property. PNC brought the foreclosure action against plaintiffs in 2010. In 2011, while the foreclosure action remained pending, PNC assigned the note and mortgage to BANA.

In November 2014, plaintiffs filed a declaratory judgment action, case no. 2014-CH-19090 in the Circuit Court of Cook County, seeking a declaration that the note and mortgage are

void because they are misleading, not properly notarized, and on their face not in compliance with applicable regulations, including the federal Truth in Lending Act ("TILA").

On October 28, 2015, in the foreclosure action, the state court granted BANA's motion for summary judgment and entered a judgment of foreclosure and sale.[1]

On February 17, 2016, the circuit court dismissed the declaratory action with prejudice. On March 17, 2016, plaintiffs filed a timely appeal, which remains pending.

Plaintiffs filed this case on March 14, 2016, asserting violations of TILA, including failure to respond to plaintiffs' rescission notice within 20 days of receipt, and failure to cancel the note and mortgage. Plaintiffs filed an amended complaint on May 10, 2016, and PNC and BANA both moved to dismiss. On the date that plaintiffs' response brief was due, plaintiffs instead filed a motion for leave to file a second amended complaint. The proposed second amended complaint abandons the TILA claims asserted in the previous complaints in favor of a number of other claims in eleven counts: (1) negligent damage to credit, (2) declaratory judgment, (3) temporary restraining order and preliminary injunction to enjoin the foreclosure sale, (4) fraudulent misrepresentation, (5) breach of good faith and fair dealing, (6) quiet title, (7) accounting, (8) specific performance, (9) breach of contract, (10) violation of RICO Act, 18 U.S.C. §§ 1961-1964, and (11) discrimination and violation of civil rights pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Fair Housing Act, 42 U.S.C. §§ 3601-3619, and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f. Broadly, the gist of the proposed second amended complaint is that defendants failed to properly apply plaintiffs' payments to their account; defendants mischaracterized plaintiffs' obligations under the note and mortgage,

---

[1] The Court is permitted to take judicial notice of state-court orders and other filings in the state-court cases, which are matters of public record, without converting the instant motions into motions for summary judgment. *See, e.g., 4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n.4 (7th Cir. 2000); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

including by ignoring a loan modification (although plaintiffs also appear to admit that the loan modification was a "ruse" offered by a rogue "loan negotiator" rather than a valid loan modification); and defendants brought the foreclosure action even though, based on a proper understanding of plaintiffs' obligations, plaintiffs were not actually behind in their payments.

Shortly after moving for leave to file the amended complaint, on June 21, 2016, plaintiffs moved for a temporary restraining order staying the foreclosure sale of plaintiffs' property, which was scheduled for June 27, 2016. Plaintiffs claimed that they had removed the foreclosure action to federal court in July 2015, where it was given case number 15 C 6739, and the case was never properly remanded, so the state court had no jurisdiction to order the sale of plaintiffs' property. At a hearing on June 23, 2016, this Court denied the motion for temporary restraining order, explaining that the motion was baseless; the district judge to whom case number 15 C 6739 had been assigned (not the undersigned judge) had dismissed the case on August 25, 2015, because it was improvidently removed from state court, and under such circumstances, the state court need not wait for some sort of technical remand before it begins to exercise jurisdiction again.

On October 13, 2016, plaintiffs filed a version of the same temporary restraining order request, stating that the foreclosure sale was set for October 18, 2016 (it had evidently been rescheduled) and again seeking to stay the foreclosure sale, on the same grounds. This Court denied the request again, on October 14, 2016, for the same reasons it gave at the June 23 hearing.

Defendants have filed briefs in opposition to plaintiffs' motion for leave to file a second amended complaint, arguing that the motion should be denied because plaintiffs' proposed amendments would be futile. In particular, defendants argue that this court lacks subject-matter

jurisdiction over plaintiffs' claims under the *Rooker-Feldman* doctrine and, even if the Court could exercise jurisdiction, plaintiffs fail to state a claim on which relief can be granted in any of the eleven counts of the proposed second amended complaint. PNC also argues that the case should be stayed under the *Colarado River* abstention doctrine.

## **DISCUSSION**

Both PNC and BANA argue that the Court lacks subject-matter jurisdiction over plaintiffs' claims because they are barred by the *Rooker-Feldman* doctrine. This doctrine precludes district courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (citing 28 U.S.C. § 1257). It bars claims that seek redress for injury allegedly caused by the state-court judgment. *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015); *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014).

BANA argues that the *Rooker-Feldman* doctrine applies here because this lawsuit is essentially a request for this Court to review the state-court declaratory action. While some portions of plaintiffs' proposed amended complaint are reminiscent of the declaratory action, in which plaintiffs alleged essentially that the note and mortgage documents were facially deficient because they failed to comply with various regulatory requirements, the gist of the proposed second amended complaint, as the Court explained above, is that defendants failed to properly apply plaintiffs' payments to their account, mischaracterized their obligations under the note and mortgage, and brought the foreclosure action even though, based on a proper understanding of those obligations, plaintiffs were not actually behind in their payments. These claims are broadly

related to the mortgage, but they have less to do with the validity of the mortgage (as in the declaratory action) than with the servicing of the loan and the foreclosure of the mortgage. The claims in this case are not a request to review the state-court judgment in the declaratory action or to redress the same injury plaintiffs' complained of in the declaratory action. *See Iqbal*, 780 F.3d at 730.

PNC also argues that the *Rooker-Feldman* doctrine bars plaintiffs' claims, but it takes a slightly different tack: it argues that the *foreclosure* action, rather than the declaratory action, bars plaintiffs' claims under *Rooker-Feldman*. This argument may be closer to the mark. Nowhere in the proposed second amended complaint do plaintiffs describe injuries that are genuinely distinct from the foreclosure itself and the loss of their home. Indeed, the relief plaintiffs request appears generally directed at preventing the foreclosure or restoring plaintiffs' home to them: in their prayer for relief, plaintiffs mention a number of vague, standard items such as damages (without specifying precisely for what), but among the more specific relief they request are an order restraining a foreclosure sale, cancellation of any notice of default, "reform[ation]" of the relevant deed in favor of plaintiffs, and orders "correcting the damage caused to each plaintiff's credit scores." Plaintiffs are essentially seeking review of the foreclosure action or to redress injury caused by the foreclosure action, which the *Rooker-Feldman* doctrine prohibits.

However, it is unclear whether a state-court decision can bar a federal court from exercising jurisdiction under *Rooker-Feldman* if the state-court decision is interlocutory.[2] In this

---

[2] In *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005), the Seventh Circuit stated, citing *Exxon Mobil*, 544 U.S. at 291-92, that "an interlocutory ruling does not evoke the [*Rooker-Feldman*] doctrine or preclude federal jurisdiction," but this statement was arguably *dicta* because the court went on to rule that the federal action was independent, rather than a *de facto* appeal, of the state action, and *Rooker-Feldman* did not apply in any case. In *Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014), the Seventh Circuit recognized that there is a circuit split on the issue of whether *Rooker-Feldman* applies to interlocutory orders, but it had no need to "choose sides" in *Harold* because the relevant state-court order was clearly final, not interlocutory. Still, in *dicta*, without mentioning

case, although the state court has entered a judgment of foreclosure, that judgment is not final under Illinois law because the circuit court has not yet entered an order confirming a judicial sale. *See EMC Mort. Corp. v. Kemp*, 982 N.E.2d 152, 154 (Ill. 2012).

Alternatively, PNC argues that this Court should stay this action pursuant to the *Colorado River* doctrine. "Pursuant to *Colorado River*, a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817-18 (1976)). "The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results." *Id.*

The first step in the analysis is to determine whether the concurrent state and federal actions are parallel. *Id.* "For a state court case to be parallel to a federal court case under the *Colorado River* doctrine, there must be 'a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Id.* (citing *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1985)). To be parallel, the cases need not be identical; the court must examine whether "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* at 1018-19 (quoting *Interstate Material Corp. v. City of Chi.*, 847 F.2d 1285, 1288 (7th Cir. 1988)).

This suit and the foreclosure action are parallel. The parties to the foreclosure action are BANA and plaintiffs, both parties to this suit. True, PNC is not a party to that action, but the parties need not be "completely identical," just substantially the same, for suits to be sufficiently

---

*TruServ*, the court expressed skepticism that interlocutory decisions should be treated any differently from final decisions, explaining that "[t]he principle that only the Supreme Court can review the decisions by the state judiciary in civil litigation is as applicable to interlocutory as to final state-court decisions," and a "truly interlocutory decision should not be subject to review in *any* court; review is deferred until the decision is final." *Id.*

parallel. *Clark v. Lacy,* 376 F.3d 682, 686 (7th Cir. 2004). The parallel nature of actions "cannot be destroyed by simply tacking on a few more defendants." *Id.* at 686-87. The central issue in both cases, and the issue on which plaintiffs' remaining claims are premised, is whether BANA has the right to foreclose on plaintiffs' home based on the status of plaintiffs' debt (*i.e.*, whether they are in default or not) and the mortgage securing the debt. Entry of a final order in the foreclosure action will substantially, if not fully, resolve the matter.

Where, as here, there are parallel federal and state proceedings, the Court then considers the following non-exclusive factors to determine whether it should abstain:

> 1) whether the state has assumed jurisdiction over property;
> 2) the inconvenience of the federal forum;
> 3) the desirability of avoiding piecemeal litigation;
> 4) the order in which jurisdiction was obtained by the concurrent forums;
> 5) the source of governing law, state or federal;
> 6) the adequacy of state-court action to protect the federal plaintiff's rights;
> 7) the relative progress of state and federal proceedings;
> 8) the presence or absence of concurrent jurisdiction;
> 9) the availability of removal; and
> 10) the vexatious or contrived nature of the federal claim.

*Freed*, 756 F.3d at 1018 (citing *Tyrer v. City of S. Beloit*, 456 F.3d 744, 754 (7th Cir. 2006)). No one factor is necessarily determinative, and "the careful weighing of all factors is necessary to determine whether circumstances exist warranting abstention." *Id.* (citing *Colorado River*, 424 U.S. at 818-19). The factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *LaDuke v. Burlington N. R.R.*, 879 F.2d 1556, 1559 (7th Cir. 1989) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983)).

The majority of the factors enumerated by the Seventh Circuit, taken together, weigh in favor of abstention. Factor three, the desirability of avoiding piecemeal litigation, weighs strongly in favor of abstention given that plaintiffs' claims are likely to be substantially or fully resolved by the foreclosure action. "Piecemeal litigation occurs when different tribunals

7

consider the same issue, thereby duplicating efforts and possibly reaching different results." *LaDuke*, 879 F.2d at 1560 (internal quotation marks omitted). This Court and the state court are considering the same issue—BANA's rights, as successor in interest to PNC, with respect to the subject property—which results in a duplication of time and effort and the potential for gamesmanship and conflicting rulings.

Factors four and seven also favor abstention. The foreclosure action has been pending since 2010 and is drawing to a conclusion. A judgment of foreclosure has been entered, and a sale awaits, or perhaps has already taken place. Only judicial confirmation of the sale remains.

Factor one weighs in favor of abstention because the state court assumed jurisdiction over the property at issue when it entered the judgment of foreclosure in 2015. Factors five, six and eight—the source of governing law, the adequacy of state-court action to protect the federal plaintiff's rights, and the presence of concurrent jurisdiction—also favor abstention. Although some of plaintiffs' claims involve federal law, they are all related to BANA's alleged inability to pursue foreclosure, which is a matter of Illinois mortgage-foreclosure law. The Court has no reason to question the adequacy of the state-court action to protect plaintiffs' rights. Under factor ten, the Court looks at whether the federal claim is vexatious or contrived. The timing of the instant action leads the Court to believe that it is a contrived reaction to plaintiffs' setbacks in the state-court foreclosure proceeding and the declaratory action. The remaining factors, two and nine, are neutral.

Because eight of the ten enumerated factors favor abstention and two are neutral, there are exceptional circumstances warranting abstention under *Colorado River*. The Seventh Circuit has repeatedly held that "the appropriate procedural mechanism when deferring to a parallel

state-court proceeding is a stay, not a dismissal." *Montano v. City of Chi.*, 375 F.3d 593, 602 (7th Cir. 2004). Accordingly, the Court will stay the remaining claims in this action.

PNC and BANA also argue that, even if plaintiffs' claims are not barred by *Rooker-Feldman* and this Court has subject-matter jurisdiction, plaintiffs fail to state a claim. Defendants may raise these arguments again after the state-court foreclosure proceeding concludes, if the Court determines at that point that the *Rooker-Feldman* doctrine does not prevent this Court from exercising jurisdiction over at least some of plaintiffs' claims.

## CONCLUSION

Defendants' motions to dismiss [46] and [56] are denied as moot because plaintiffs have abandoned the claims in the first amended complaint [42]. Plaintiffs' motion for leave to file a second amended complaint [60] is granted, but this action is stayed pursuant to the *Colorado River* abstention doctrine pending the outcome of the state-court foreclosure proceeding. The parties are directed to notify this Court when a final order has been entered in that foreclosure proceeding.

**SO ORDERED.**                                             **ENTERED**: October 28, 2016

**HON. JORGE L. ALONSO**
**United States District Judge**